**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Andre Wadlington-Anthony,       )
                                       )
     *Plaintiff,*               )
                                       )
         v.                )     Civil Action No. 19-cv-01690
                                       )
United States of America.       )     Judge Robert W. Gettleman
                                     )
     *Defendant.*            )
                                     )
                                     )
                                     )
                                     )
                                     )
                                     )
                                     )

**SECOND AMENDED COMPLAINT**

Plaintiff Andre Wadlington-Anthony, by his attorneys, complains against Defendant as follows:

**NATURE AND STATUTORY BASIS OF ACTION**

1.     This is an action by Plaintiff Andre Wadlington-Anthony ("Plaintiff"), an inmate currently housed at FCI Florence, 5880 Hwy 67 South, Florence, CO 81226, whose constitutional rights have been violated by Defendant's officers' and employees' continued and consistent deliberate indifference toward his serious medical needs and by their continued failure to provide appropriate medical treatment following Plaintiff's injury in September 2019.

2.     Plaintiff brings this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80. Plaintiff seeks compensatory damages.

## THE PARTIES

3.      Plaintiff is a United States citizen.  During the relevant time periods referenced in this Complaint, Plaintiff was incarcerated within the Metropolitan Correctional Center, Chicago ("MCC Chicago"), located at 71 W Van Buren St, Chicago, IL 60621; the Federal Transfer Center in Oklahoma City ("FTC"), located at 7410 S. MacArthur Blvd, Oklahoma City, OK, 7319; the Gilmer Federal Correctional Institution ("FCI Gilmer"), located at 201 FCI Lane, Glenville, WV 26351; and the Florence Federal Correctional Institution ("FCI Florence"), located at 5880 Hwy 67 South, Florence, CO 81226.

4.      The Federal Bureau of Prisons ("FBOP") is an agency of the United States, as that term is defined under 5 U.S.C. § 552(f)(1).  The FBOP operates within this district and has offices within the territorial limits of this district.

5.      MCC Chicago is a facility of the FBOP.

6.      FTC is a facility of the FBOP, which is an agency of the United States government.

7.      FCI Gilmer is a facility of the FBOP, which is an agency of the United States government.

8.      FCI Florence is a facility of the FBOP, which is an agency of the United States government.

9.      Plaintiff's prisoner identification number is 18752-026.

10.      Defendant the United States of American ("the United States") has a federal agency, the FBOP, which has a facility identified as the MCC Chicago.

11.     Rick Vaccarello, Brij Mohan, Donald Ross, Dominic Weskamp, Bonnie Nowakowski, Monica Zavala, John Does Nos. 1, 2, 3, and Jane Does Nos. 1 and 2 acted in their official capacities as federal employees of the United States and the FBOP.

12.     At all material times herein, Vaccarello, Mohan, Ross, and Nowakowski were (and upon information and belief continue to be) employed by the United States government as doctors at MCC Chicago.

13.     At all material times herein, Weskamp, Zavala, and John Does Nos. 1 and 2 were (and upon information and belief continues to be) employed by the United States government as medical professionals at MCC Chicago.

14.     At all material times herein, John Doe No. 3 and Jane Doe No. 1 were (and upon information and belief continue to be) employed by the United States government as Correction Officers at MCC Chicago.

15.     At all material times herein, Jane Doe No. 2 was (and upon information and belief continues to be) employed by the United States government as a medical professional at FCI Gilmer.

**<u>JURISDICTION AND VENUE</u>**

16.     This Complaint arises under the provisions of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 28 U.S.C. §§ 2671-2680 *et seq.*, 28 U.S.C. § 1402(b) and 28 U.S.C. § 1331 with pendant jurisdiction over any state law claims.  This Court has federal question jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331.

17.     Plaintiff filed an Administrative Claim for Relief, No. TRT-NCR-2019-03918, to the FBOP pursuant to the FTCA, 28 U.S.C.A. § 1346(b), 2671 *et. seq*.  The FBOP sent Plaintiff a notification of final denial under 28 C.F.R. § 14.9 on October 7, 2019 and informed Plaintiff he

may file suit in an appropriate U.S. District Court no later than six months after the date of mailing of the notification.

18.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because, upon information and belief, a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

19.     On September 14, 2017, in the early afternoon, numerous inmates assaulted Plaintiff at MCC Chicago following a card game.  Upon information and belief, MCC Chicago has video footage of the fight.  John Doe No. 3, a correction officer, was on duty at the time of the fight.  Upon information and belief, upon seeing the fight on video, John Doe No. 3 approached the inmates to break up the fight.  The inmates stopped fighting upon hearing his approach.  John Doe No. 3 then walked away.

20.     Plaintiff initially followed John Doe No. 3, but John Doe No. 3 did not ask him any questions.  John Doe No. 3's shift ended shortly thereafter, and John Doe No. 3 left for the day.  On information and belief, John Doe No. 3 was aware of Plaintiff's injury because he had observed the fight via video.

21.     As the day progressed, Plaintiff realized that his jaw was in increasing pain and told a new correction officer, Jane Doe No. 1.  Jane Doe No. 1 sent him to Weskamp, a medical practitioner, for assessment.

22.     Weskamp told Plaintiff he would be seen by medical staff the following day. Upon information and belief, Plaintiff did not receive any X-rays or pain medication that day, despite it being apparent that his jaw was broken.

4

23.     After Plaintiff refused to identify who caused his injuries, MCC Chicago staff, including Jane Doe No. 1, sent Plaintiff to solitary confinement in MCC Chicago's Special Housing Unit ("SHU") rather than receiving any further medical treatment.  On information and belief, John Doe No. 3 was also involved in this decision.

24.     The following day, Bonnie Nowakowski examined Plaintiff and took an x-ray, which showed Plaintiff had a broken jaw.  Nowakowski prescribed Plaintiff 500 mg of penicillin, to be taken four times a day, 500 mg of naproxen, to be taken two times a day, and nutritional supplements.  Nowakowski did not refer Plaintiff to an oral surgeon, despite his broken jaw.

25.     Instead, the above individuals and other as-yet-unidentified MCC personnel sent Plaintiff back to SHU pending "investigation" of the original fight.  These individuals and other as-yet-unidentified MCC personal kept Plaintiff in SHU for approximately nine days.  Upon information and belief, MCC Chicago sent Plaintiff to SHU as punishment for refusing to identify who else had been involved in the fight, despite MCC Chicago having video footage of the fight, which showed which inmates were involved.  Upon information and belief, MCC Chicago did not send the other inmates involved in the fight to SHU.  MCC Chicago did not release Plaintiff from SHU until he finally identified who was responsible for his injuries.

26.     On September 18, 2017, Vaccarello and Zavala examined Plaintiff, who complained that he was in constant pain from his injuries.  Vaccarello requested a consultation for oral surgery, but set a target date of September 27, 2017 – thirteen days after Plaintiff's jaw was broken.  Vaccarello designated the request as routine priority despite knowledge of the broken jaw and despite Plaintiff's complaints regarding the severity of his pain.

27.     Upon information and belief, despite complaining about his injuries and pain to John Doe Nos. 1 and 2, medical professionals attending to Plaintiff, John Doe Nos. 1 and 2 did

5

not provide Plaintiff with additional medical care or pain medication sufficient to provide Plaintiff pain relief or sufficient to prevent later medical complications arising from his broken jaw.

28. The above individuals and other as-yet-unidentified MCC personnel did not take Plaintiff to an oral surgeon for consultation until October 11, 2017, more than a month after Plaintiff's jaw was broken, and more than two weeks after the "target date" set by Vaccarello. The oral surgeon, Dr. David Hanson (DDS MD) noted that Plaintiff had suffered blunt force trauma to his face, resulting in multiple fractures. Dr. Hanson explained to Plaintiff that he could not treat the fractures by simply wiring Plaintiff's mouth shut because, due to the delay in scheduling, Plaintiff's fractures had already begun healing improperly and Plaintiff was suffering from gross malocclusion. Dr. Hanson prescribed Plaintiff an antibiotic, Clindamycin; Peridex; a pureed diet for the following three weeks; and recommended jaw surgery as Plaintiff's jaw had already begun healing improperly. Upon information and belief, Mohan, Vaccarello, and Ross reviewed the results of Dr. Hanson's consultation.

29. Upon information and belief, if Plaintiff had received a prompt consultation from an oral surgeon, he could have received corrective treatment that would have properly addressed the injury and which would have avoided the medical complications that Plaintiff in fact endured. Because of the delays in medical treatment, Plaintiff instead required intensive jaw surgery, which Dr. Hanson could not perform.

30. On October 12, 2017, the day after Plaintiff's initial consultation, Vaccarello recorded in an administrative note that Plaintiff suffered from a fracture of his right parasymphasis and left mandibular angle, and that the oral surgeon, Dr. Hanson, recommended a referral to Stroger Hospital for corrective surgery due to fibrous healing resulting in

6

malocclusion.  Vaccarello set a target date of October 19, 2017 for this referral, and finally designed the request as emergent, rather than routine, priority.

31.     The above individuals and other as-yet-unidentified personnel did not see to it that Plaintiff met this target date of October 19, 2017.

32.     On November 22, 2017, a month after this target date, the above individuals and other as-yet-unidentified personnel finally took Plaintiff to an oral surgeon, Sunil Sinha (DDS). Upon information and belief, Dr. Sinha explained to Plaintiff that he had teeth misalignment and diagnosed Plaintiff with facial asymmetry and apertognathia ("Open Bite") due to improper healing of his fractured jaw.  Because of the delays which had already occurred, Dr. Sinha recommended waiting several more months for further healing before reconstructive surgery.

33.     On January 5, 2018, Plaintiff visited the Dental Clinic at MCC Chicago, again complaining that his jaw hurt.  Vaccarello informed Plaintiff that this was due to misalignment as his fractures were healing improperly, and that the issue required surgery.  Vaccarello prescribed Plaintiff naproxen, an anti-inflammatory medication, but did not take any other steps to remedy Plaintiff's discomfort.

34.     On February 6, 2018, nearly five months after Plaintiff was first injured, the above individuals and other as-yet-unidentified personnel finally took Plaintiff to another oral surgeon for consultation, Dr. Harshiv Vyas, for reevaluation of Plaintiff's mandibular fractures. Plaintiff reported persistent malocclusion, clicking of left TMJ, worsening pain when chewing, and numbness on his lower lip and the left side of his mandible.  A CT Scan confirmed that Plaintiff had a left mandibular angle fracture and a right parasymphysis fracture.  Because of Plaintiff's malocclusion, Dr. Vyas elected to wait three to four more months for bone healing prior to surgical treatment to improve the chances that the treatment would succeed.

35. On May 8, 2018, nearly eight months after Plaintiff was first injured, Plaintiff again saw Dr. Vyas, who recommended scheduling surgical treatment and confirmed Plaintiff's diagnosis of facial asymmetry and apertognathia. The above individuals and other as-yet-unidentified personnel finally scheduled Plaintiff for surgery on May 31, 2018.

36. On May 30, 2018, Vaccarello and Mohan spoke with Dr. Vyas regarding Plaintiff's surgical plan. While Dr. Vyas originally planned a bilateral mandibular sagittal split ostetomy to repair the improper healing of Plaintiff's left mandibular angle fracture and a right parasymphysis fracture, because of Plaintiff's malocclusion due to improper healing, Dr. Vyas modified the plan to further include a LaForte 1 osteotomy and repositioning of the jaw. Dr. Vyas also informed Vaccarello and Mohan that he would be placing plates in Plaintiff's maxilla and mandible with IMF screws and elastics for fixation. Vaccarello and Mohan approved this modified surgical plan.

37. On or around May 31, 2018, Plaintiff was admitted to Advocate Christ Memorial Hospital and finally received surgery to repair his mandibular fractures. Due to the improper healing of Plaintiff's fractured jaw, Plaintiff's buccal bone required additional reinforcement. Upon information and belief, the surgeons, Dr. Sinha and Dr. Vyas, did not place any plates on Plaintiff's right side.

38. Plaintiff suffered from considerable pain following surgery. Upon information and belief, Dr. Vyas originally planned to prescribe Plaintiff oxycodone (a painkiller) for pain management. However, after speaking to Vaccarello, Dr. Vyas instead prescribed Plaintiff Naprosyn (an anti-inflammatory medication) and two Tylenol, 3 times a day.

39. Plaintiff was released from Advocate Christ Memorial Hospital on June 4, 2018. Plaintiff returned to MCC Chicago with his mouth wired shut. The above individuals and other

as-yet-unidentified personnel told Plaintiff that his wires would be removed in approximately six weeks. Doctors at Advocate Christ provided a pair of wire cutters in case the wires needed to be removed in an emergency. The above individuals gave them to the unit officer rather than medical staff. Upon information and belief, the unit officer did not have any medical training.

40.     After Plaintiff returned to MCC Chicago, Vaccarello tightened Plaintiff's loose wires. On or around June 19, 2018, less than three weeks after surgery, the above individuals and other as-yet-unidentified personnel sent Plaintiff to Dr. Vyas, who cut Plaintiff's wires and replaced them with elastic rubber bands. Dr. Vyas noted that Plaintiff was supposed to be presented to Dr. Vyas for follow up within a week after surgery, not nearly three weeks later. Dr. Vyas recommended another follow up within 10 to 14 days.

41.     Vaccarello removed the elastic bands on the following day, and wired Plaintiff's mouth shut again.

42.     Vaccarello removed Plaintiff's wiring approximately a week later.

43.     Upon information and belief, Plaintiff informed Vaccarello that his teeth were shifting again following surgery. Vaccarello informed Plaintiff that the surgeons were supposed to plate both sides of his mouth, not just the left side. Vaccarello did not take any steps to remedy this issue.

44.     On July 3, 2018, Plaintiff again visited the Dental Clinic at MCC Chicago, reporting significant pain in his jaw. Ross examined Plaintiff and recorded a fracture on Plaintiff's right side, which had not received a plate, tenderness on his right side, jaw pain, cellulitis and abscess of the mouth, and increased facial swelling. Ross ordered Plaintiff to be treated with penicillin and naproxen. Upon information and belief, Ross told Plaintiff he did not

9

know why the surgeons had not plated Plaintiff's right side after intentionally breaking it during surgery. Ross did not take any steps to remedy this issue.

45. On July 5, 2018, the above individuals and other as-yet-unidentified personnel brought Plaintiff to Dr. Vyas for another follow up. Dr. Vyas reported that the surgical sites were healing well. Dr. Vyas further noted that Plaintiff should have his arch bars removed in 1-2 weeks.

46. Vaccarello and Zavala removed Plaintiff's arch bars approximately a week later.

47. On July 11, 2018, Vaccarello prescribed Plaintiff more naproxen. Vaccarello requested a new consultation with Dr. Vyas with a target date of August 31, 2018, and designated the request as routine priority to check on Plaintiff's healing following surgery. Upon information and belief, Vaccarello spoke with one of the surgeons who stated they would follow up with Plaintiff three months after surgery.

48. On or about September 18, 2018, Plaintiff met with Vaccarello, who presented Dr. Vyas with Plaintiff's complaints. Dr. Vyas stated that in 6-8 months, he could address one of Plaintiff's ongoing issues, *i.e.*, his bony prominence over his right posterior mandible, by bone recontouring. Dr. Vyas indicated that he would refer Plaintiff to an orofacial pain specialist in the future if necessary.

49. Plaintiff never saw either of the surgeons again.

50. On November 28, 2018, Plaintiff was transferred from MCC Chicago to the Federal Transfer Center in Oklahoma City. On December 11, 2018, Plaintiff was transferred to FCI Gilmore in West Virginia. On June 4, 2019, Plaintiff was sent back to the Federal Transfer Center in Oklahoma City. Plaintiff was transferred to FCI Florence in Colorado on June 14, 2019.

10

51. Upon information and belief, Plaintiff is scheduled to be transferred again soon.

52. Upon information and belief, when Plaintiff was in custody at FCI Gilmore, Jane Doe No. 2 sanded down Plaintiff's teeth after he complained about the bony prominence over his right posterior mandible. This did not remedy the issue.

53. Upon information and belief, Plaintiff has not received any additional medical treatment at any of these locations.

54. Because of Defendant's employees' deliberate indifference to Plaintiff's medical condition and practice of ignoring Plaintiff's medical requests and needs, Plaintiff experienced significant and unnecessary pain and discomfort from his fractured jaw. Plaintiff still suffers from jaw pain, numbness, and an inability to chew properly. Plaintiff's bottom teeth are improperly shifted, and he cannot bite down on his left side—an issue that Plaintiff did not have before his jaw was fractured. Plaintiff also continues to suffer from swelling when he eats or talks.

## COUNT I

### FTCA: NEGLIGENCE

55. Plaintiff realleges and incorporates herein the allegations set forth in the above paragraphs.

56. The United States, by and through its employees, had a duty to Plaintiff to act with ordinary care and prudence so as to not cause harm or injury to Plaintiff.

57. This duty included, but was not limited to, the duty to respond to or treat Plaintiff's medical needs.

58. By engaging in the acts alleged herein, the United States, by and through its employees, failed to act with ordinary care and breached its duty of care owed to Plaintiff.

11

59. As a direct and proximate result of this breach of duty of care, Plaintiff suffered and continues to suffer personal injuries, pain, emotional distress, mental anguish, and loss of dignity.

WHEREFORE, Plaintiff respectfully requests the following relief:

A. Actual and compensatory damages in an amount to be determined at trial against the United States; and

B. Any other relief which this Court many deem just and proper.

Respectfully submitted,

Dated:  April 27, 2022

By:  */s/ Cameron Nelson*
Cameron Nelson
Callie J. Sand
Benjamin Gilford
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone:  312-456-8400
Facsimile:  312-456-8435

Counsel for Plaintiff Andre Wadlington-Anthony